*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* B. SCHULTZ, Minor.

UNPUBLISHED
July 10, 2025
11:21 AM

Nos. 371875 and 372727
Macomb Circuit Court
Family Division
LC No. 24-000026-NA

Before: GADOLA, C.J., and RICK and YATES, JJ.

PER CURIAM.

In these consolidated appeals, respondent-mother appeals of right the trial court's order of adjudication (Docket No. 371875),[1] and its order terminating her parental rights to her minor child, BS (Docket No. 372727).[2] We affirm.

## I. FACTUAL BACKGROUND

Respondent-mother and respondent-father—who was a respondent in the trial court, but is not a party to this appeal—have a long history with Children's Protective Services (CPS). In July 2020, CPS substantiated allegations of improper supervision of BS after respondent-mother posted "a picture on the internet of [BS] in a dog cage." As a result, BS was removed from respondents' care and custody and placed in a foster home, and respondents were offered services. Respondent-father completed the services, and BS was returned to his care. In contrast, respondent-mother did not complete the services, and she had no contact with BS. The last time respondent-mother saw BS was March 2022.

---

[1] Although respondent-mother has appealed the order of adjudication, she does not challenge the adjudication itself. The only issue before this Court is whether the trial court erred by finding that termination of respondent-mother's parental rights was in BS's best interests.

[2] We consolidated Docket Nos. 371875 and 372727 on October 10, 2024. *In re B Schultz Minor*, unpublished order of the Court of Appeals, entered October 10, 2024 (Docket No. 371875).

-1-

In November 2023, respondent-father left BS in the care of Hazel Gurski when respondent-father "went into rehabilitation." The record contains conflicting evidence about whether Gurski was fictive kin or a cousin of respondent-father. On February 2, 2024, respondent-father went to Gurski's home while visibly intoxicated. He yelled and pounded on the door. After the incident, the Michigan Department of Health and Human Services (DHHS) filed a petition, requesting the removal of BS from respondents' care. The petition claimed respondent-mother had a history of substance abuse, mental-health concerns, and criminality. On March 6, 2024, the lawyer-guardian ad litem for BS filed a supplemental petition requesting termination of respondents' parental rights to BS at the initial disposition.

In July 2024, witnesses testified at the adjudication hearing, including Dr. Lindsay Carr, who performed a trauma assessment on BS. When Carr asked BS about respondent-mother, BS did not answer; he became quiet and withdrawn. Gurski stated that BS only mentioned respondent-mother on two occasions while in her care. In one instance, BS made a comment about respondent-mother dumpster diving. In the other instance, BS told Gurski he did not want to see respondent-mother. BS formed a bond with Gurski and her son, and BS was doing well in Gurski's home. As a result, the trial court found that termination of respondent-mother's parental rights was warranted under MCL 712A.19b(3)(g) and MCL 712A.19b(3)(j).

At a best-interest hearing on September 9, 2024, the trial court heard the testimony of Laura Henderson, BS's therapist, who explained that BS was diagnosed with PTSD because of abusive "interactions with his parents over his lifetime." BS's PTSD due to respondent-mother manifests as emotional numbing. BS called respondent-mother by her first name. BS had minimal memories of her, but he did remember being locked in a dog cage. Henderson opined it would be detrimental for BS to have contact with respondents. She did not believe that respondent-mother and BS had a bond. On September 16, 2024, the trial court concluded that termination of respondent-mother's parental rights was in BS's best interests. Respondent-mother now appeals that determination.

## II. LEGAL ANALYSIS

On appeal, respondent-mother contests only the trial court's finding that termination of her parental rights was in BS's best interests.[3] To terminate parental rights, a trial court must find by a preponderance of the evidence on the whole record that termination is in the child's best interests. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). This Court reviews for clear error the trial court's finding regarding a child's best interests. *Id.* "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Jackisch/Stamm-Jackisch*, 340 Mich App 326, 333; 985 NW2d 912 (2022) (quotation marks and citation omitted). Applying these principles, we must decide whether the trial court committed clear error in finding that termination of respondent-mother's parental rights was in BS's best interests.

---

[3] Although respondent-mother states in her appellate brief that she "is not contesting the findings that statutory grounds [for termination] existed[,]" we have reviewed, and we approve, the findings of the trial court that termination was appropriate under MCL 712A.19b(3)(g) (failure to provide proper care and custody) and MCL 712A.19b(3)(j) (reasonable likelihood of harm).

This Court has listed numerous factors that a trial court should consider in determining the best interests of a child, including the child's bond to the parent, the parent's parenting ability, the need for permanency, stability, and finality, the advantages of a foster home over a parent's home, the child's age, inappropriate parenting techniques, continued involvement in domestic violence, visitation history, the parent's engaging in questionable relationships, the parent's compliance with treatment plans, the child's well-being in care, and the possibility of adoption. *In re Sanborn*, 337 Mich App 252, 276-277; 976 NW2d 44 (2021). Respondent-mother faults the trial court for failing to sufficiently consider the best-interest factors, but the record reveals that the trial court carefully considered the evidence and addressed the relevant factors in making its best-interest finding.

The trial court found that termination was in BS's best interests because respondent-mother had been offered services, but she had failed to create a safe environment in which BS could live. In October 2020, the Macomb County Friend of the Court recommended that respondent-mother participate in a variety of services to address her substance abuse, her mental-health concerns, and her parenting deficiencies. Respondent-mother did not participate in those services.

The trial court considered the trauma that BS had endured because of respondent-mother's "inability to self-regulate." The trial court noted that BS had "learned at a very young age to expect chaos." As the trial court observed, Henderson had testified that BS suffered from PTSD, caused in part by respondent-mother's emotional abuse and substance use, and BS's PTSD manifested as "emotionally numbing." For example, when he was asked about respondent-mother, BS stuttered and struggled to talk about her.

The trial court also considered BS's lack of a bond with respondent-mother. The trial court relied on the testimony of Carr, who conducted BS's trauma assessment, and subsequently testified that BS could not verbalize feelings about respondent-mother. BS had not seen respondent-mother since March 2022. BS referred to respondent-mother by her first name, and he did not regard her as a maternal figure. He remembered respondent-mother locking him a dog cage, and he became silent and withdrawn when the dog cage was discussed.

Respondent-mother also contends that the trial court erred by failing to properly consider BS's placement with a relative. "[A] child's placement with relatives weighs against termination." *In re Mason*, 486 Mich 142, 164; 782 NW2d 747 (2010). Thus, the fact that a child is "in the care of a relative at the time of the termination hearing is an explicit factor to consider in determining whether termination was in the children's best interest." *In re Olive/Metts*, 297 Mich App 35, 43; 823 NW2d 144 (2012) (quotation marks and citation omitted). "A trial court's failure to explicitly address whether termination is appropriate in light of the child[ ]'s placement with relatives renders the factual record inadequate to make a best-interest determination and requires reversal." *Id*.

BS has been in Gurski's care since 2023,[4] but the record does not clearly establish whether Gurski was BS's cousin or merely a family friend. Respondent-father testified that Gurski was a cousin. Gurski stated that she had known respondent-father for "24 or 26 years," and respondent-father was "like a cousin" to her. Regardless of whether Gurski was BS's cousin or fictive kin, we

---

[4] Gurski testified that BS had been in her care since July 2023, whereas respondent-father testified that BS had been in Gurski's care since November 15, 2023.

conclude that Gurski meets the definition of a "relative" under MCL 712A.13a(j). Whether Gurski is a blood-related cousin or a fictive kin with a "strong positive emotional tie" to BS, our analysis remains the same. MCL 712A.13a(j). The trial court properly considered BS's placement with a "relative" when making its best-interest determination. The trial court acknowledged that BS was placed with a relative, but explained that BS needed permanency. Gurski was interested and able to provide BS with the permanency he deserves. BS looked to Gurski, rather than his parents, for love, support, comfort, and protection. Thus, the trial court properly resolved the issue regarding BS's placement with a relative in making its best-interest finding.

Finally, respondent-mother asserts that the trial court failed to consider guardianship as a less-restrictive alternative to adoption. Respondent-mother has not established that the trial court erred by failing to explicitly consider guardianship when making its best-interest finding. As this Court has explained:

> Typically, the appointment of a guardian is done in an effort to avoid termination of parental rights. And for a court to consider a guardianship before termination, one of two conditions must be met: either the DHHS must demonstrate under [MCL 712A.19a(8)] that initiating the termination of parental rights to the child is clearly not in the child's best interests or the court must not order the agency to initiate termination proceedings under MCL 712A.19a(8). Even then, a court can order a guardianship only if it determines that [doing so] is in the child's best interests. [*In re Rippy*, 330 Mich App 350, 359; 948 NW2d 131 (2019).]

None of the conditions stated in *In re Rippy* was met in this case. See *id.* No party petitioned for guardianship. The trial court found that termination of respondent-mother's parental rights was in BS's best interests. Although guardianship was never mentioned during the best-interest hearing, the trial court discussed BS's need for permanency, and Gurski stated a desire to adopt BS, which would provide him with more permanency and stability than a guardianship. Thus, the trial court acted properly in terminating respondent-mother's parental rights to BS.

Affirmed.

/s/ Michael F. Gadola
/s/ Michelle M. Rick
/s/ Christopher P. Yates

-4-